James **BLOOMQUIST**, Appellant (Defendant),

v.

The **STATE** of Wyoming, Appellee (Plaintiff).

No. 95–65.

Supreme Court of Wyoming.

April 3, 1996.

Sylvia L. Hackl, State Public Defender; and Deborah Cornia, Assistant Public Defender, for Appellant.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Mi-

chael Pauling, Senior Assistant Attorney General; and Mary B. Guthrie, Special Assistant Attorney General, for Appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

MACY, Justice.

Appellant James Bloomquist appeals from his conviction for aggravated vehicular homicide.

We affirm.

## ISSUES

Appellant presents several issues for our review:

*Issue I*

Did the trial court abuse its discretion and deny Appellant the right to confront an adverse witness when it ruled that the State's expert witness was unavailable and admitted the witness' videotaped deposition into evidence?

*Issue II*

Was the Appellant denied his constitutional right to a unanimous verdict?

*Issue III*

Was Appellant denied effective assistance of counsel due to trial counsel's deficient performance?

*Issue IV*

Did the sentencing proceeding violate Appellant's right to due process, and Wyoming Rule of Criminal Procedure 32, as well as the Eighth Amendment to the United States Constitution and Article 1 Section 14 of the Wyoming Constitution?

*Issue V*

Was the evidence produced at trial sufficient to prove beyond a reasonable doubt that the Appellant caused the death of his passenger?

*Issue VI*

Was the cumulative effect of the errors discussed above such as to deny the Appellant his right to a fair trial and substantial justice?

## FACTS

At approximately 10:15 p.m. on December 6, 1993, Patrolman Earl Frye, who was patrolling the highway between Glenrock and Casper, came upon a Jeep which was parked diagonally in the right westbound lane of I–25 just east of Casper. The door on the driver's side of the Jeep was open, the Jeep's engine was not running, and its headlights were not turned on. Patrolman Frye checked the inside of the Jeep and found that it was empty. Shortly thereafter, a truck driver, who was traveling on the eastbound side of the interstate, advised Patrolman Frye that a man's body was lying in the road. Patrolman Frye drove to the paved crossover and proceeded to the location where the victim was lying. He examined the man, determined that he had suffered severe body and head trauma, and concluded that he was dead.

Patrolman Frye subsequently investigated the accident scene by examining the path that the vehicle traveled and the markings which were left. He established that, as the Jeep was traveling in an easterly direction, it drifted off the left side of the road. It made a sharp turn to the right and then a hard turn to the left. The vehicle became airborne as it entered the median, and it remained airborne for thirty-two feet, five inches. The Jeep skidded to a stop in the westbound lane of the interstate.

During Patrolman Frye's investigation, he determined that the victim had been ejected from the Jeep through the passenger door when the vehicle made the sharp turn to the left and that he had landed in the eastbound lanes of traffic. The position of the victim's body as well as the damage on the passenger door supported Patrolman Frye's conclusion. The fabric and flesh transfers which Patrolman Frye found on the pavement were also consistent with a conclusion that the victim had been ejected through the Jeep's passenger door.

Witnesses testified that the victim had been lying on his back, lifting his head, trying to sit up but that several vehicles subsequently ran over him because it was dark and very difficult for anyone to see him. The coroner determined that a head injury was

the cause of the victim's death. The victim had a blood alcohol content of .32 percent.

After sitting in a field and watching the accident scene for approximately ninety minutes, Appellant approached a patrolman and identified himself as the driver of the Jeep. He was very cold, he smelled of alcohol, his speech was slurred, and he staggered when he walked. Appellant was informed of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and then questioned. Although he later denied that a third person was in the Jeep, Appellant originally explained that he, the victim, and another individual were in the Jeep and that they were traveling east on I–25 at a high rate of speed after having consumed a substantial amount of alcohol and some marijuana when he lost control of his Jeep.

At approximately 1:30 a.m., more than three hours after the accident occurred, a sample of Appellant's blood was drawn in order to measure his blood alcohol content. The test showed that Appellant had a blood alcohol content of .21 percent.

Appellant was charged with aggravated vehicular homicide. The jury found Appellant guilty of the crime, and the trial court sentenced him to serve a term of not less than twelve years nor more than fourteen years in the Wyoming State Penitentiary. Appellant appeals to this Court.

## DISCUSSION

### A. Unavailability of Witness

Appellant claims that the trial court abused its discretion and denied him his right to confront an adverse witness when it ruled that Patrolman Rick Dye, an accident reconstructionist, was unavailable and admitted his videotaped deposition into evidence.

The trial date was continued several times. Patrolman Dye had incurred nonrefundable expenses in connection with a vacation he was planning to take. His vacation date and the date to which the trial had been continued conflicted with each other. The district attorney, therefore, requested permission to take and videotape Patrolman Dye's deposition. The trial court granted the request. Patrolman Dye testified that, although he could not determine how fast the vehicle was moving when it went out of control, he was able to determine that, at the point where the Jeep began skidding to a stop, it was going fifty-four miles per hour. He also testified that the victim had been ejected from the vehicle when it veered radically to the left.

The trial court allowed the prosecution to use Patrolman Dye's videotaped deposition at trial in lieu of his live testimony and, pursuant to W.R.Cr.P. 15, W.R.E. 803(24), and W.R.E. 804(b)(6), admitted the deposition into evidence over the defense counsel's objections. W.R.Cr.P. 15(e), which addresses the subject of depositions, provides in pertinent part:

(e) *Use.*—At the trial or upon any hearing, a part or all of a deposition, so far as otherwise admissible under the rules of evidence, may be used as substantive evidence if the witness is unavailable, as unavailability is defined in Rule 804(a), W.R.E., or the witness gives testimony at the trial or hearing inconsistent with that witness's deposition.

The pertinent portion of the unavailability definition found in W.R.E. 804(a)(5) is as follows:

(a) *Definition of unavailability.*—"Unavailability as a witness" includes situations in which the declarant:

. . . . .

(5) Is absent from the hearing and the proponent of his statement has been unable to procure his attendance by process or other reasonable means.

The determination of whether a witness is unavailable is a matter which rests within the discretion of the trial court, and we will not overturn that determination unless a showing has been made that the trial court abused its discretion. *Williams v. Collins Communications, Inc.*, 720 P.2d 880, 889 (Wyo.1986). The proponent of the evidence bears the burden of establishing that the witness is unavailable. *Id.; Grable v. State*, 649 P.2d 663, 672 (Wyo.1982). The witness's absence from the state will not be sufficient, except in the most unusual circumstances, to

establish that the witness is unavailable. *Williams,* 720 P.2d at 890.

We find guidance on this issue from a similar Washington Court of Appeals case. *State v. Sanchez,* 42 Wash.App. 225, 711 P.2d 1029 (1985). In *Sanchez,* the defendant was charged with "negligent homicide by means of a motor vehicle" after he had driven when he had a blood alcohol content of .19 percent and had caused the death of another person. 711 P.2d at 1031. The trial was continued to a date on which the arresting deputy had planned to be on vacation in Mexico. *Id.* The prosecution was allowed to preserve the deputy's testimony by way of a videotaped deposition at which all parties were present. *Id.* Over the objection of the defense, the trial court allowed the videotape into evidence at trial. *Id.* On appeal, the Washington Court of Appeals reversed the defendant's conviction because the prosecution had failed to establish that the deputy was in fact unavailable to testify at the trial. 711 P.2d at 1033. The court had the following to say with regard to the unavailability requirement:

> [T]he State did not show that [the deputy] was obliged to leave the jurisdiction. Further, the State did not show that it tried to subpoena her or attempt to use reasonable means to procure her attendance at trial. The court arrived at its decision that she was unavailable out of respect for her vacation plans. This does not satisfy the requirement of unavailability. Because the prosecution failed to show a good faith effort to obtain [the deputy's] testimony at trial, the videotape deposition was improperly admitted into evidence.

*Id.* We have held that the "catch-all" exceptions under W.R.E. 803(24) and 804(b)(6) are to be used cautiously and only in exceptional cases.

In the case at bar, the State failed to demonstrate that it was unable to procure Patrolman Dye's attendance at the trial by process or by any other reasonable means. The deposition testimony was used out of consideration for Patrolman Dye's vacation plans. We agree with the Washington Court of Appeals that unavailability due to vacation plans does not satisfy the unavailability re-

quirement. The trial court, therefore, abused its discretion when it allowed Patrolman Dye's deposition to be admitted into evidence.

Patrolman Dye's testimony, however, only corroborated the opinions of the other experts who testified at the trial. Patrolman Frye testified that the cause of the accident was a combination of speed and alcohol. He also testified that he believed enough force was generated when the Jeep made its sharp turn to the left to throw the victim's body against the door and force it open and, as a result, the victim was ejected. He testified that the damage to the passenger door and the windshield, as well as the way the fabric from the victim's clothing had been transferred onto the road, was consistent with that theory. Sergeant Michael Martin agreed that the victim had been ejected through the Jeep's passenger door.

Although the trial court abused its discretion when it admitted Patrolman Dye's deposition into evidence as such a ruling violated Appellant's right to confront the witness, we hold that the error was harmless given that the deposition testimony did not compromise the outcome of the trial. *See State v. Scott,* 48 Wash.App. 561, 739 P.2d 742, 745–46 (1987) (although the showing of unavailability was not sufficient to support the admission of the deposition into evidence, the error was harmless under the circumstances as the testimony corroborated another witness's testimony).

## B. Unanimous Verdict

■ Appellant claims that he was denied his constitutional right to have a unanimous verdict because he was charged in more than one way with committing aggravated vehicular homicide. He is concerned because the information alleged that he either drove the Jeep in a reckless manner or drove it while he was under the influence of alcohol. He argues that, since the verdict form listed only the two options of guilty or not guilty of aggravated vehicular homicide, he had no way to determine upon which of the two charges the jury convicted him.

While we recognize that a general verdict must be reversed when the verdict is supportable on one ground but not on the other and when it is impossible to ascertain which ground the jury relied upon in reaching its verdict, a reversal is not required when sufficient evidence supports each alternative ground for a defendant's conviction. *Cloman v. State*, 574 P.2d 410, 412 (Wyo. 1978). When a defendant has been charged with committing a crime by either of two alternative means and both statutory alternatives are submitted to the jury and are supported by sufficient evidence, a general verdict on the charge will be affirmed. *Fife v. State*, 676 P.2d 565, 568 (Wyo.1984). When sufficient evidence supports each alternative ground for a defendant's conviction, we will not set aside the conviction solely because we are unable to determine which ground served as the basis for the jury's decision. *Price v. State*, 807 P.2d 909, 912 (Wyo.1991).

WYO.STAT. § 6–2–106(b) (Supp.1995) provides:

> (b) A person is guilty of aggravated homicide by vehicle and shall be punished by imprisonment in the penitentiary for not more than twenty (20) years, if:
>
> (i) While operating or driving a vehicle in violation of W.S. 10–6–103, 31–5–233 or 41–13–206, he causes the death of another person and the violation is the proximate cause of the death; or
>
> (ii) He operates or drives a vehicle in a reckless manner, and his conduct is the proximate cause of the death of another person.

A person violates WYO.STAT. § 31–5–233(b) (Supp.1995) when he drives or has physical control of a vehicle while he has a blood alcohol content of .10 percent or more or while he is under the influence of alcohol, a controlled substance, or a combination thereof to a degree which renders him incapable of driving safely.

We conclude that the State introduced sufficient evidence to support the allegation that Appellant committed aggravated vehicular homicide by either driving while he was intoxicated or driving in a reckless manner. Medical evidence was introduced which established that Appellant was very intoxicated at the time of the accident. The State offered ample evidence to show that inclement road and weather conditions that night did not cause the accident but that Appellant's high speed swerving did cause it. The jury could have reasonably concluded that Appellant was intoxicated, that he drove his vehicle in a reckless manner, and that either or both circumstances were the proximate cause of the victim's death.

## C. Assistance of Counsel

Appellant asserts that his trial counsel's deficient performance denied him effective assistance of counsel. Specifically, Appellant claims that his trial attorney's representation was inadequate for the following reasons: Counsel failed to investigate this case by having his own expert evaluate the vehicle and complete an accident reconstruction; counsel should have moved for another continuance in order to properly investigate the reports which he received from the prosecution prior to trial; counsel should have moved to suppress Appellant's involuntary statements; and counsel failed to object to the jury instructions or offer a lesser-included-offense instruction.

" 'The right of a criminal defendant to assistance of counsel is guaranteed by the Sixth Amendment of the Constitution of the United States, made applicable to the states through the Fourteenth Amendment and Wyoming Constitution Art. 1, § 10.' " *Owen v. State*, 902 P.2d 190, 198 (Wyo.1995) (quoting *Herdt v. State*, 891 P.2d 793, 796 (Wyo.1995)). The standard which this Court has followed in determining whether a criminal defendant has been denied the effective assistance of counsel was first established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

> "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors

were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, *reh'g denied,* 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984).

. . . .

We examine the conduct of defense counsel in light of all the circumstances in determining whether the identified acts or omissions fall outside the ambit of professionally competent assistance, bearing in mind the function of counsel is to make the adversarial testing process work in every case. We do not evaluate the efforts of counsel from a perspective of hindsight but, rather, we endeavor to reconstruct the circumstances surrounding counsel's challenged conduct and evaluate the professional efforts from the perspective of counsel at the time. "We invoke a strong presumption that counsel rendered adequate and reasonable assistance making all decisions within the bounds of reasonable professional judgment." *Gist [v. State],* 737 P.2d [336,] 342 [ (Wyo.1987) ] (citations omitted). The burden is upon the defendant to overcome this presumption that, in light of the circumstances, the challenged action or failure of the attorney might be considered sound trial strategy.

*Dickeson v. State,* 843 P.2d 606, 609 (Wyo. 1992) (some citations omitted).

■ Appellant claims that his trial counsel failed to call an expert to support the defense's theory that the victim had remained in the Jeep until it came to a violent stop, at which time he hit his head on the windshield, and that he exited the Jeep and wandered out onto the road where he was subsequently run over. Appellant claims that the crack in the windshield proves his theory and that an expert should have been called to provide supporting testimony.

We have addressed the issue of whether assistance of counsel is compromised by the failure to call an expert. *McCoy v. State,* 886 P.2d 252 (Wyo.1994). In *McCoy,* we held that, in order for a decision not to call an expert to be considered as being evidence that counsel's performance was deficient, the defendant must show that such expert testimony was available and necessary. 886 P.2d at 256. Consequently, Appellant must show that an expert was available who would have testified consistently with his theory. Appellant failed to make that required showing.

None of the investigating patrolmen who testified could lend credence to Appellant's theory, even when they were under quite rigorous questioning by Appellant's trial counsel. Patrolman Frye testified that he was not able to find any evidence to support the theory that the victim had wandered across the median onto the road. Patrolman Martin agreed with Patrolman Frye and testified that he believed the victim had been ejected because the body fluid stains on the road were similar to those which would have been made by a thrown and ruptured water balloon. The pathologist testified that the victim's shoes did not have any evidence of mud which would support the theory that the victim wandered through the median onto the opposite lanes of traffic.

Appellant's argument is ultimately of little consequence because he would not have been able to show that a failure to produce such expert testimony prejudiced him. Even if Appellant were able to convince the jury of his theory, the result of the trial would not have been different because, if Appellant's acts had caused the victim to hit his head hard enough on the windshield to cause the windshield to crack, those acts would still constitute the proximate cause of the victim's disoriented wanderings and his death.

■ " 'Proximate cause means that the accident or injury must be the natural and probable consequence of the act of negligence.' " *Glazier v. State,* 843 P.2d 1200, 1204 (Wyo.1992) (quoting *McClellan v. Tottenhoff,* 666 P.2d 408, 414 (Wyo.1983)).

"A defendant is usually relieved of liability by an unforeseeable intervening cause. However, an intervening cause does not relieve an earlier actor of liability if it was reasonably foreseeable. The causal con-

nection is not broken where the original wrongdoer could reasonably have foreseen that injury to another would be a probable consequence of his negligence."

843 P.2d at 1205 (quoting *McClellan*, 666 P.2d at 414 (citations omitted)). Appellant could be relieved of criminal liability only if the victim's disoriented wanderings were unforeseeable. We conclude, however, that such disoriented wanderings would be a foreseeable result of a car accident in which the victim sustains a hard hit to the head and that, therefore, Appellant's actions were the proximate cause of the victim's death even under the defense's theory.

■ Appellant claims that his attorney should have moved for a continuance so that he could investigate more. This claim must be examined in light of Appellant's claim that his counsel should have called an expert witness because his theory would have been enhanced had his counsel been able to find an expert to provide supporting expert testimony. We have already addressed that argument. We add, however, that Appellant's counsel had sufficient time in which to prepare this case. The trial which had been originally scheduled for February 14, 1994, was continued until July 11, 1994. Appellant does not present any persuasive reasoning as to why the investigation could not have been completed in that time. He also fails to demonstrate what could have been accomplished through a further investigation. Appellant's counsel adequately presented Appellant's theory to the jury by rigorously questioning the investigating officer as well as many of the State's witnesses.

Appellant finds fault with his trial counsel's waiver of his right to have a separate hearing on the issue of the voluntariness of the tape-recorded statements which he gave soon after the accident. Although Appellant does not find this error to be egregious enough to claim that admission of his statements into evidence was error, he does argue that failure to move for a suppression of his statements constitutes ineffective assistance of counsel. We disagree. Shortly after Appellant showed up on the scene, he was advised of his rights under *Miranda* and questioned. He told the patrolman that he had been smoking marijuana, that he had consumed several beers, and that he was speeding down the interstate when the accident occurred.

■ We recently considered the issue of whether failure to file a suppression motion constitutes ineffective assistance of counsel. *Herdt*, 891 P.2d 793; *Starr v. State*, 888 P.2d 1262 (Wyo.1995), *overruled on other grounds by Jones v. State*, 902 P.2d 686 (Wyo.1995). In *Herdt* and *Starr*, we held that failure to file a suppression motion did not constitute ineffective assistance of counsel *per se*. *Herdt*, 891 P.2d at 799; *Starr*, 888 P.2d at 1266. Instead, the reasonableness of counsel's challenged conduct must be analyzed from that counsel's perspective at the time of the alleged error and in light of the surrounding circumstances. *Herdt*, 891 P.2d at 799.

■ In the case at bar, Appellant has not satisfied his burden of establishing that his trial counsel was deficient in not filing a motion to suppress his statements or that such failure prejudiced him. After examining Appellant's tape-recorded statements in their entirety, we conclude that Appellant voluntarily gave his statements. Although at various times throughout the questioning Appellant expressed a desire to stop talking, he ultimately changed his mind and continued telling the patrolmen what happened. During the times when Appellant seemed reluctant to talk, the patrolmen properly confirmed his willingness to continue talking.

Before counsel makes a motion to suppress evidence, "[c]ounsel must be aware of some basis in law and fact upon which relief can be granted." *Starr*, 888 P.2d at 1267. Had Appellant's trial counsel moved for the suppression of Appellant's statements, the district court would have been correct in denying the motion under the facts of this case. "Prejudice cannot result to an accused when h[is] counsel fails to seek relief which is not available to h[im]." *Id.*

■ Furthermore, the patrolmen's "community caretaking functions" warranted continued questioning as Appellant had told them that two passengers were in the vehicle with him. *See Wilson v. State*, 874 P.2d 215,

219 (Wyo.1994). Since the patrolmen had found only one of the alleged passengers, they were justifiably concerned that another person was in the vicinity who possibly needed immediate medical attention. Appellant's constitutional rights were not violated when his statements were introduced into evidence.

▆ Appellant challenges his counsel's decisions not to object to the jury instructions or offer a lesser-included-offense instruction. Since the jury was able to choose alternative grounds on which to convict Appellant, he maintains that his trial counsel should have requested that the instruction be given which pertained to the lesser-included offense of homicide by vehicle, Wyo.Stat. § 6–2–106(a) (Supp.1995), a misdemeanor offense which is punishable by a maximum sentence of one year in the county jail.

▆ We have already discussed the fact that the jury was given alternative grounds on which to convict Appellant, so we will not discuss that argument again here. Regarding the lesser-included-offense argument, Appellant's defense theory was that his driving was not the proximate cause of the victim's death but that the victim getting out of the vehicle and wandering out onto the interstate was the cause. Under this theory, the decision not to request the instruction was a sound tactical decision since the lesser-included-offense instruction would have undermined Appellant's "all or nothing" strategy. A defense counsel's tactical decision to forego an instruction which is inconsistent with the theory of his defense does not constitute ineffective assistance of counsel.

As the State correctly pointed out in its brief, the instruction proposed by Appellant would not have aided him. The proposed instruction presumed that Appellant's actions were the proximate cause of the victim's death, and the issue for the jury at that point would have been only whether Appellant's conduct was criminally reckless or whether it was criminally negligent. Given the overwhelming evidence of Appellant's intoxication in addition to the strong evidence of the excessive rate of speed at which he was traveling, a reasonable jury could not have found him guilty of being merely criminally negligent. Therefore, even if Appellant's counsel had requested the lesser-included-offense instruction, the trial court would have been correct in denying the request.

We hold that Appellant's defense counsel did not perform deficiently and that, therefore, Appellant was not prejudiced by the manner in which his trial attorney conducted his case. Indeed, after reviewing the record in its entirety, we are of the opinion that Appellant's trial counsel was quite effective in presenting Appellant's defense to the jury. The fact that Appellant's theory was ultimately unsuccessful does not require a holding that he did not receive effective assistance of counsel.

## D. Sentencing

▆ Appellant asserts that the sentencing proceeding violated his due process right because the prosecutor requested that Appellant be sentenced to serve a prison term of not less than twelve years nor more than fifteen years and the trial court ordered Appellant to serve a term of not less than twelve years nor more than fourteen years. Appellant claims that the prosecutor's recommendation constituted vindictiveness and retaliation against him because he had refused to accept a plea bargain and had insisted on exercising his right to have a jury trial.

▆ At the core of Appellant's argument is the proposed plea agreement which the prosecution offered to Appellant in exchange for a guilty plea. The proposed plea agreement, unfortunately, does not appear in the record. Consequently, we are not obligated to consider Appellant's argument since it cannot be supported by the record. *See Mentock v. Mentock,* 638 P.2d 156, 160 (Wyo. 1981). We note, however, that, even had the agreement been included in the record, we would have held that Appellant's sentence was not a result of vindictiveness. The trial judge was responsible for rendering Appellant's sentence, not the prosecuting attorney. We, therefore, fail to see how the prosecutor's vindictiveness could have had anything to do with the sentence which was given to Appellant. Furthermore, even had Appellant accepted the plea agreement, the trial

judge would not have been bound by the prosecutor's recommendation.

 The presentence investigation report revealed that Appellant had been breaking the law for almost nine years and that he had a significant history of serious alcohol abuse. The trial court certainly took that information into account when it was sentencing Appellant. Given the serious nature of Appellant's crime, in addition to his alcoholism and trouble with the law, the trial court acted within its discretion.

Appellant also claims that the trial court did not follow the mandates of W.R.Cr.P. 32(a)(3)(C) because it did not attach written findings to the presentence investigation report with regard to the disputed factual information. W.R.Cr.P. 32(a)(3)(C) provides:

(C) If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make:

(i) A finding as to the allegation; or

(ii) A determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to penal institutions.

In the case at bar, the only factual disagreement Appellant had regarding the presentence investigation report was with the probation agent's assertion that Appellant denied he had a problem with alcohol. At the hearing, Appellant claimed that he did not make such a denial, and he admitted that he did indeed have a problem with alcohol. Since he agreed that he did have a problem with alcohol, the dispute as to whether or not he admitted it was not crucial to his sentencing. The only other disagreements Appellant had regarding the report were with the probation agent's "editorializing" and with his opinion that Appellant showed only superficial remorse. These were not factual challenges. We conclude that it was not necessary for the trial court to attach any findings as the information which Appellant disagreed with did not have any impact on his sentence.

 Appellant also maintains that the trial court erred when it sentenced him to serve a term of not less than twelve years nor more than fourteen years for his offense because such a sentence is disproportionate to the sentences which were given to other defendants who had been convicted of the same crime. With respect to this argument, we have previously stated that, except in capital punishment cases, successful challenges to the proportionality of a sentence will be extremely rare. *Pote v. State,* 733 P.2d 1018, 1023 (Wyo.1987).

Giving substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts are afforded, we cannot determine that the sentences imposed in this case were disproportionate to the crimes for which he was convicted.

733 P.2d at 1024.

We conclude that Appellant's proportionality assertion lacks merit. His sentence was well within the maximum penalty allowed by the statute, and, therefore, the trial court did not err when it sentenced Appellant.

### E. Sufficiency of the Evidence

 Appellant asserts that the totality of the evidence in this case was not sufficient to support an aggravated-vehicular-homicide conviction. He claims that a rational trier of fact could not have found him guilty of aggravated vehicular homicide beyond a reasonable doubt without resorting to speculation and conjecture.

 This Court assesses whether all the evidence which was presented is adequate enough to form the basis for a reasonable inference of guilt beyond a reasonable doubt to be drawn by a finder of fact when that evidence is viewed in the light most favorable to the State. *Hodges v. State,* 904

P.2d 334, 339 (Wyo.1995). We leave out of consideration entirely the evidence presented by the unsuccessful party which conflicts with the successful party's evidence, and we afford every favorable inference to the successful party's evidence which may be reasonably and fairly drawn from that evidence. *Cavender v. State,* 860 P.2d 1162, 1164 (Wyo. 1993). We have consistently held that, even though it is possible to draw other inferences from the evidence which has been presented, the jury has the responsibility to resolve conflicts in the evidence. *Wetherelt v. State,* 864 P.2d 449, 452 (Wyo.1993). We will not substitute our judgment for that of the jury when we are applying this rule; our only duty is to determine whether a quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury actually did. *Hodges,* 904 P.2d at 339.

Extensive evidence was introduced at trial in the form of testimony and medical evidence with regard to the fact that Appellant was extremely intoxicated at the time of the accident. Considerable evidence was also introduced which indicated that Appellant's high speed swerving resulted in the victim being thrown from the Jeep onto the interstate where he was run over and killed. We conclude that such evidence was sufficient to permit the reasonable inference to be drawn that Appellant's conduct was the proximate cause of the victim's death.

The fact that Appellant presented a different theory does not mean that the jury engaged in mere speculation or conjecture in rejecting that theory. As we discussed previously, even had the jury believed the events occurred the way Appellant theorized, it still could have reasonably found that the victim's death was proximately caused by Appellant's conduct.

## F. Cumulative Error

Appellant claims that the cumulative effect of the claimed errors discussed within this opinion denied him his right to have a fair trial and substantial justice. The only error which the trial court committed in this case was harmless, and, thus, the trial court did not commit any error which would support Appellant's cumulative error claim.

## CONCLUSION

Appellant's conviction for aggravated vehicular homicide is affirmed.