Terry B. SWANSON, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).

No. 98–99.

Supreme Court of Wyoming.

May 25, 1999.

James K. Lubing of James K. Lubing Law Office, Jackson, Wyoming, Representing Appellant.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and James L. Radda, Special Assistant Attorney General, Cheyenne, Wyoming, Representing Appellee.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and TAYLOR,* JJ.

TAYLOR, Justice, Retired.

Appellant, Terry B. Swanson (Swanson), contests the judgment and sentence entered after a jury found him guilt of larceny. Finding no error, we affirm.

## I. ISSUES

Swanson presents three issues for our review:

(1) Did the State engage in vindictive prosecution when it refused to grant Terry B. Swanson a deferred adjudication under W.S. § 7–13–301 [1] in retaliation for Terry B. Swanson's decision to try the case?

(2) Did the Trial Court commit plain error when it denied Terry B. Swanson's motion for a judgment of acquittal on the basis that the State had failed to proffer any evidence supporting the intent element of the crime of larceny by bailee, and in fact, the evidence was overwhelming that * * * Terry B. Swanson lacked the criminal intent necessary to convict him of the crime charged?

(3) Was the jury's verdict supported by the evidence even though the State had failed to proffer any evidence supporting the intent element of the crime of larceny by bailee?

The State of Wyoming, as appellee, rephrases the issues as:

I. Did the State engage in a vindictive prosecution of appellant by withholding its consent to a deferred adjudication under Wyo. Stat. § 7–13–301 after appellant was found guilty at trial?

II. Did the trial court commit plain error when it denied appellant's motion for judgment of acquittal?

III. Was there sufficient evidence to support the jury's verdict?

## II. FACTS

In March of 1994, Swanson was hired by the Teton Board of Realtors (the Board) as a part-time executive director. Initially, he was employed without a written contract, but after several months the Board allowed him to write his own employment contract. The agreement specified that Swanson would be paid $12.00 per hour for "not less than an average of 24 hours per week." From that point on, Swanson was paid for 100 hours a month, which worked out to be $1,200.00 gross income and $928.20 net income per month.

The arrangement was satisfactory to both the Board and Swanson for over two years. In late 1996, however, Swanson began to have problems with the new President of the Board. As their disputes came to a head, Swanson informed the President that he had been accruing hours and vacation time for the past two years. The President investigated, but found no evidence that the Board had ever consented to any accrual of hours. The Board had always considered Swanson a salaried employee.

On January 3, 1997, Swanson faxed a letter of resignation to the Board, but not before he wrote himself two checks on the Board's

* Retired November 2, 1998.

1. Wyo. Stat. Ann. § 7–13–301(a) (Michie 1997) provides, in pertinent part:

(a) If a person who has not previously been convicted of any felony is charged with or is found guilty of or pleads guilty to any misdemeanor except any second or subsequent violation of W.S. 31–5–233 or any similar provision of law, or any felony except murder, sexual assault in the first or second degree or arson in the first or second degree, the court may, with the consent of the defendant and the state and without entering a judgment of guilt or conviction, defer further proceedings and place the person on probation for a term not to exceed five (5) years upon terms and conditions set by the court.

account in excess of $4,000.00. Swanson claims that one check covered 310 hours that he had accrued over the years, and one covered his January salary and accrued vacation hours. The checks were written out of sequence, and Swanson failed to enter the amount in the check register, make copies of the checks, or enter the amount in the computer as was standard practice in the office. Swanson did, however, subtract the payroll taxes that would be due on the income if in fact he was entitled to the money.

No one on the Board authorized the payment, and Swanson made no effort to tell the Board that he had taken the money. In fact, on January 20, 1997, Swanson wrote a letter to the Board stating that he still expected to be paid for his accrued time. Swanson stayed on through the end of January to train the new executive director, and on February 3, 1997, the new executive director gave him a $928.20 check for his work during the month of January. Swanson said nothing about the check he had written himself on January 3, 1997, covering his salary for the same month.

The Board did not discover that the checks had been written until the monthly bank statement was issued in February. The Board immediately demanded that the money be returned, but Swanson refused to comply. Swanson was charged with two counts of larceny in violation of Wyo. Stat. Ann. § 6–3–402(b) and (c)(i) (Michie 1997).[2]

The State and Swanson could not reach a plea agreement, and the case went to trial. At the close of the State's case, Swanson moved for a judgment of acquittal based on the State's failure to prove the element of intent. The motion was denied, and the defense then presented evidence that Swanson took the money under a claim of right. The jury's verdict suggests that the argument was, in part, successful. The jury found Swanson guilty on one of the two counts of larceny, and determined the amount stolen to be $928.20.

The district judge wrote the parties a letter asking whether they thought deferred sentencing was appropriate in this case. Defense counsel agreed that it was appropriate; however, the prosecutor refused to consent to a deferred sentence. Swanson was ultimately sentenced to six months of unsupervised probation and restitution in the amount of $928.20.

## III. STANDARDS OF REVIEW

### A. VINDICTIVE PROSECUTION

Our review of vindictive prosecution claims follows the Tenth Circuit Court of Appeals' method:

"A defendant has the burden of proof and must establish either (1) actual vindictiveness, or (2) a realistic likelihood of vindictiveness which will give rise to a presumption of vindictiveness. Thereafter, the burden shifts to the prosecution to justify its decision with legitimate, articulable, objective reasons. If the defendant does not meet his burden of proof, however, the district court need not reach the government justification issue."

*Crozier v. State*, 882 P.2d 1230, 1234 (Wyo. 1994) (*quoting Whiteplume v. State*, 874 P.2d 893, 896 (Wyo.1994) and *United States v. Raymer*, 941 F.2d 1031, 1040 (10th Cir. 1991)).

We have held that a vindictive motive will be presumed if the government responds to a defendant's exercise of a legal right in a manner which punishes him for exercising the right. *Phillips v. State*, 835 P.2d 1062, 1070 (Wyo.1992); *United States v. Goodwin*, 457 U.S. 368, 373–74, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982). "The presumption arises when the government acts by imposing in-

---

2. Wyo. Stat. Ann. § 6–3–402(b) and (c)(i) provide:

   (b) A bailee, a public servant as defined by W.S. 6–5–101(a)(vi) or any person entrusted with the control, care or custody of any money or other property who, with intent to steal or to deprive the owner of the property, converts the property to his own or another's use is guilty of larceny.

   (c) Except as provided by subsection (e) of this section, larceny is:
    (i) A felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,000.00), or both, if the value of the property is five hundred dollars ($500.00) or more[.]

creased charges, such as changing a charge from a misdemeanor to a felony or subjecting him to the possibility of greater sentence or in some other way 'upping the ante.'" *Phillips*, 835 P.2d at 1070 (*citing Blackledge v. Perry*, 417 U.S. 21, 28, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974) and *North Carolina v. Pearce*, 395 U.S. 711, 723–24, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)).

### B. Denial of the Motion for Judgment of Acquittal

We have often stated the standard of review which we use when we are reviewing a denial of a motion for a judgment of acquittal: " '[W]e accept as true the evidence of the prosecution, together with all logical and reasonable inferences to be drawn therefrom, leaving out entirely the evidence of the defendant in conflict.' " *DeVries v. State*, 909 P.2d 977, 978 (Wyo.1996) (*quoting Apodaca v. State*, 796 P.2d 806, 807 (Wyo.1990)).

> " 'A motion for judgment of acquittal is to be granted only when the evidence is such that a reasonable juror must have a reasonable doubt as to the existence of any of the essential elements of the crime. Or, stated another way, if there is substantial evidence to sustain a conviction of the crime, the motion should not be granted. This standard applies whether the supporting evidence is direct or circumstantial.' * * * *Leppek v. State*, 636 P.2d 1117, 1119 (Wyo.1981)."

*Beintema v. State*, 936 P.2d 1221, 1228 (Wyo. 1997) (*quoting Apodaca*, 796 P.2d at 807).

### C. Substantial Evidence to Support Verdict

In analyzing a sufficiency-of-the-evidence argument:

> "This Court assesses whether all the evidence which was presented is adequate enough to form the basis for a reasonable inference of guilt beyond a reasonable doubt to be drawn by a finder of fact when that evidence is viewed in the light most favorable to the State. We will not substitute our judgment for that of the jury when we are applying this rule; our only duty is to determine whether a quorum of reasonable and rational individuals would,

or even could, have come to the same result as the jury actually did."

*DeVries*, 909 P.2d at 979 (*quoting Hodges v. State*, 904 P.2d 334, 339 (Wyo.1995)). "We leave out of consideration entirely the evidence presented by the unsuccessful party which conflicts with the successful party's evidence, and we afford every favorable inference to the successful party's evidence which may be reasonably and fairly drawn from the evidence." *Bloomquist v. State*, 914 P.2d 812, 824 (Wyo.1996); *see also Cavender v. State*, 860 P.2d 1162, 1164 (Wyo.1993).

## IV. DISCUSSION

### A. Vindictive Prosecution

■ Swanson first contends that the prosecutor's refusal to consent to a deferred sentence was in retaliation for Swanson's decision to exercise his constitutional right to trial. A claim of vindictive prosecution, however, is not applicable in the context of consent to deferred sentence.

The benchmark of vindictive prosecution is "upping the ante" in some way. In *Billis v. State*, 800 P.2d 401, 422 (Wyo.1990), we found that the power of the prosecutor to consent to a deferred sentence is analogous to a pardon. Based on the analogy, we determined that, like a pardon, consent to a deferred sentence "is also seen as an act of grace, proceeding from the executive power." *Id.* at 422–23. An argument to this court which asserted that the Governor acted vindictively by refusing to exercise his pardon power would be short lived indeed. Similarly, the argument that Swanson is entitled in some way to the prosecutor's grace is to no avail.

The ante cannot be "upped" where the prosecutor has merely refused to exercise his equivalent pardon power. Refusal to consent to a deferred sentence levies no additional charges against a defendant, and the defendant is only subject to the legislatively proscribed penalty which accompanies the charge. Vindictive prosecution, therefore, has no application to the prosecutor's decision to withhold consent to a deferred sentence.

That is not to say that the prosecutor's decision is always beyond review. In *Billis,* 800 P.2d at 434, we described how the doctrine of separation of powers prevents our review of a prosecutor's decision not to consent to a deferred sentence, unless the decision was based upon an impermissible standard such as race, religion, or other arbitrary classification. However, we will not presume that suspect factors or arbitrary classifications exist, and Swanson has failed to allege that the prosecutor's decision was based upon an impermissible classification.

We are not at liberty to revisit legitimate discretionary decisions entrusted to the executive branch when there is not even an allegation of constitutional overreaching. Under the circumstances presented here, we cannot review the decision of the prosecutor not to consent to a deferred sentence.

### B. DENIAL OF THE MOTION FOR JUDGMENT OF ACQUITTAL

Swanson next claims that a motion for judgment of acquittal at the close of the State's case was warranted because the State did not present evidence which negated his belief that he was entitled to the money. Following the denial of a motion for acquittal, the introduction of evidence by a defendant results in a waiver of the motion. Without a renewal of the motion, we review only the sufficiency of the evidence. *Hodges,* 904 P.2d at 339; *Farbotnik v. State,* 850 P.2d 594, 603–04 (Wyo.1993).

### C. SUFFICIENCY OF THE EVIDENCE

Swanson finally contends that there was insufficient evidence of his intent to steal to support the jury's verdict. When considering a claim that the verdict is unsupported by the evidence, we assess whether all the evidence presented is adequate to form the basis for a reasonable inference of guilt beyond a reasonable doubt to be drawn by a finder of fact when that evidence is viewed in the light most favorable to the State. *Bloomquist,* 914 P.2d at 823. We have consistently held that, even though it is possible to draw other inferences from the evidence which has been presented, the jury has the responsibility to resolve conflicts in the evidence. *Id.* at 824; *Wetherelt v. State,* 864 P.2d 449, 452 (Wyo.1993).

We will not substitute our judgment for that of the jury when we are applying this rule; our only duty is to determine whether a quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury actually did. *Bloomquist,* 914 P.2d at 824; *Hodges,* 904 P.2d at 339. In order to prove larceny, the State must prove that the defendant intended to steal or deprive the rightful owner of the property. Here, the State presented undisputed evidence that Swanson wrote two checks without the permission of the Board. He wrote the checks out of sequence, and failed to follow the established check-writing procedures. Even after he had the money in hand, he represented to the Board that he was still entitled to payment for accrued hours. When he was paid twice for the month of January, he accepted the second check without a word. The foregoing facts are sufficient to create a reasonable inference that Swanson intended to steal the property. *See Wetherelt,* 864 P.2d at 452 (defendant's removal of property without the owner's knowledge or authorization and attempts to sell the property supported requisite intent to deprive). It is obvious that a quorum of reasonable individuals could reach the same result as the jury actually did.

### V. CONCLUSION

Swanson has failed to establish that the prosecutor refused to consent to a deferred sentence based upon an impermissible characteristic of the defendant; therefore, the prosecutor's decision is not subject to review. There was also sufficient evidence presented by the State to withstand a motion for judgment of acquittal and to support the jury's verdict. The judgment and sentence of the district court is affirmed.