2002 WY 176

**Jeffrey Allen METZER, Appellant
(Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

No. 02–21.

Supreme Court of Wyoming.

Dec. 10, 2002.

Ken Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; and Ryan R. Roden, Senior Assistant Appellate Counsel, Representing Appellant. Argument by Mr. Roden.

Hoke MacMillan, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Joseph Cole, Deputy Carbon County and Prosecuting Attorney, Special Assistant Attorney General, Representing Appellee. Argument by Mr. Cole.

Before HILL, C.J., and GOLDEN, LEHMAN, and VOIGT, JJ, and DONNELL, D.J.

DONNELL, District Judge.

[¶ 1] Jeffrey Metzer appeals his convictions on two counts of aggravated burglary in violation of Wyo. Stat. Ann. § 6–3–301(a) and (c)(i) (LexisNexis 2001). Mr. Metzer asserts that there was not sufficient evidence to convict him for aggravated burglary. He further argues he was denied a fair trial by virtue of the State's failure to disclose a witness in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and related cases.

[¶ 2] We affirm.

## ISSUES

[¶ 3] Appellant raises two issues on this appeal:

1. [Was] there sufficient evidence to convict appellant of two counts of aggravated burglary?

2. [Was] Appellant denied a fair trial by the State's failure to disclose a witness and information pertaining to other possible suspects in violation of *Brandy* [sic] *v. Maryland?*

The State phrases the second issue somewhat differently:

Was Appellant denied a fair trial by the State's failure to provide him a copy of a police report prior to trial?

## FACTS

[¶ 4] On May 2, 2001 at about 5:00 p.m., Darlene Lovato returned to her home in Rawlins. It was snowing at the time, and she noticed fresh footprints on her front porch. She also noticed that the house was unusually cold when she entered. This drew her attention to an open back door where she observed a broken lock. Further seeing her bedroom was in a state of disarray, she retreated to her car and called police.

[¶ 5] Officer Mike Rose arrived on the scene and observed what he described as boot-type footprints near the back door, approximately size 11. He followed the tracks but eventually lost them on wet pavement. He did not photograph or otherwise preserve this evidence. An inventory of Ms. Lovato's property revealed that she was missing about $80 from a bowl in her living room, a money-bag containing some $300 in $2 bills, some silver coins, and a .38 caliber Colt revolver and nylon holster.

[¶ 6] On the following day at about 11:45 a.m., John France left his home in Rawlins to go to lunch. When he returned at about 1:30 p.m. he saw water on a hallway floor and a music box on the bedroom floor. The doors to the medicine cabinet in the bathroom and the linen closet were also standing open. Once again, police were called and footprints of approximately size 9 to 11 were observed in the snow. Missing from the France home were two $1 bills and a .22 caliber Browning semiautomatic pistol.

[¶ 7] Local merchants were contacted by police and asked to keep an eye out for anyone passing $2 bills. On May 6 a female customer passed a $2 bill and three silver dimes at a local Mini Mart. An alert clerk took down the license number and a description of the car, and at about noon on that day Appellant, while driving the subject automobile, was stopped by police. Metzer admitted that his driver's license was suspended and was asked to step out of the car. He was then asked whether or not he had anything in his pockets, whereupon he produced what was later determined to be 60 $2 bills. The officer suggested a detective might like to visit with him, at which point Mr. Metzer fled. He was quickly apprehended and ar-

rested. The money and his boots, Nike lug-soled size 10, were taken into evidence. A subsequent interview of Kristen Setright, the owner of the car Metzer had been driving, confirmed that she had passed the $2 bill and silver coins at the Mini Mart. A consensual search of her house turned up several silver dimes on the living room floor but no other incriminating evidence.

[¶ 8] On June 20, 2001 a local fisherman found a .22 caliber Browning semiautomatic pistol in shallow water on the north side of Teton Reservoir, a reservoir south of Rawlins. Mr. France identified the weapon as his. On July 21, 2001 children located a .38 caliber Colt revolver in a nylon holster, again in shallow water at Teton Reservoir about 100 yards from where Mr. France's pistol was found. Ms. Lovato identified this gun as her missing revolver. Both were rusty, indicating that they had been in the water for some time. No fingerprints were recovered from the guns or from any of the bills found in Appellant's possession.

[¶ 9] Trial was conducted in August of 2001. There was no real issue with respect to any of the elements of aggravated burglary except for the identity of the burglar. Testimony on both counts indicated that the houses in question had been entered without authority of the owners on the dates and at the places alleged; that property had been stolen (thus inferring intent to commit larceny), and; that the burglar had become armed with a deadly weapon in each case, those weapons being the .22 caliber Browning and the .38 caliber Colt.

[¶ 10] Testimony showed that Ms. Lovato had been relieved of 150 $2 bills and some silver coins, including dimes, in the burglary, and that Appellant had been apprehended with 60 $2 bills in his pocket only four days later. The evidence showed that his girl-friend passed a $2 bill and three silver dimes on the same day and that $2 bills and silver coins were not commonly tendered at the local Mini–Mart. Testimony also showed that Appellant attempted to flee when the issue of a detective came up, thus implying guilty knowledge. Appellant's boots and photographs of the tracks at the France burglary were provided to the jury for compari-

son and, while the footprint evidence at the Lovato burglary was less conclusive, the evidence found there did not exclude Appellant as the burglar. Also provided was evidence by which the jury might conclude both burglaries had been committed by the same person. Most compelling were the two hand-guns, stolen from private homes during daylight hours within a day of each other and located in a reservoir within 100 yards of each other.

[¶ 11] Appellant testified on his own behalf. He admitted that he had been out of work and low on funds at the time of the burglaries. He explained that he had received the $2 bills in payment for a guitar he sold in Oregon about 18 months earlier to a man he barely knew by the name of Justin. He said that he had been at Ms. Setright's house packing for a move to Casper on May 2 and 3. Finally, he indicated that he ran from the police because of his suspended driver's license.

[¶ 12] Detective Ford of the Rawlins Police Department also testified at trial, and it was through him that Appellant learned of certain additional information he considers critical. Detective Ford disclosed at trial that two other people were known to have passed $2 bills in Rawlins during the time at issue, one of them being a Mr. Rudy Makinen. The detective had interviewed Mr. Makinen and eliminated him, in his own mind, as a suspect. However, no report of this interview was delivered to the defense prior to the trial.

[¶ 13] The State, realizing the problem here, immediately located Mr. Makinen and made him available for interview by the defense. He was then called to testify by the defense. He said he had purchased ten $2 bills from a Cheyenne railroader at George's Bar and Grill in Rawlins. He believed they were all new bills from 1976 and were sequentially numbered. Appellant moved for a mistrial on the grounds that the State had improperly withheld evidence. The motion for mistrial was denied. There is no indication that the defense requested a recess or additional time to investigate or try to learn the identity of the unknown railroader.

[¶ 14] Defendant was convicted on both counts of aggravated burglary and sentenced on November 19, 2001 to concurrent terms of five to seven years each.

## DISCUSSION

[¶ 15] Metzer first alleges the evidence was not sufficient to sustain his convictions.

> When reviewing a sufficiency of the evidence claim in a criminal case, we must determine whether a rational trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt. *Jennings v. State*, 806 P.2d 1299, 1302 (Wyo.1991) (quoting *Munson v. State*, 770 P.2d 1093, 1095 (Wyo.1989)). We do not consider conflicting evidence presented by the unsuccessful party, and afford every favorable inference which may be reasonably and fairly drawn from the successful party's evidence. *Bloomquist v. State*, 914 P.2d 812, 824 (Wyo.1996).

*Williams v. State*, 986 P.2d 855, 857 (Wyo. 1999). The court does not substitute its judgment for that of the jury but rather determines only if a quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury did. *Bloomquist v. State*, 914 P.2d 812, 824 (Wyo. 1996).

[¶ 16] The following evidence concerning the identity of the burglar was presented to the jury in this matter:

1. Two burglaries of private homes occurred during daylight hours. This is not a common event in Rawlins, yet these burglaries occurred only one day apart. Firearms and money, including in one case numerous $2 bills and silver coins, were stolen in each burglary.

2. Footprints or tracks similar to the prints left by Appellant's boots were observed at each scene.

3. The stolen firearms were located in a reservoir within 100 yards of each other, and both had apparently been in the water for quite some time.

4. Appellant's girlfriend was observed passing a $2 bill and silver dimes only four days after the first burglary, and this was quite uncommon. Appellant was captured on the same day with 60 $2 bills in his possession. Additional silver coins were found on the floor at his girlfriend's residence. The $2 bills in Appellant's possession were not new and were not sequentially numbered.

5. Appellant fled police when he was advised that a detective would like to speak to him.

6. Although Appellant indicated that he had been painting and packing for two days before he was arrested, no sign of either was observed at his residence. He was unable to produce, or even provide the full name of, the individual who allegedly paid him in $2 bills for his guitar, and he did not explain why he was walking around with this money in his pocket some 18 months after he obtained it.

7. Appellant admitted he was nearly broke and unemployed at the time of the burglaries, thus providing a motive for same.

[¶ 17] Appellant points to certain "missing" evidentiary items such as the lack of fingerprints, and he offers numerous alternative explanations for the presence of the firearms in the reservoir. That is all well and good, but it is not the point. We do not consider conflicting evidence offered by Appellant, and we consider all of the evidence in a light most favorable to the prevailing party, in this case the State. Given the undisputed facts that Appellant was in possession of a large number of $2 bills, an unusual currency to say the least, and that silver coins were discovered strewn on the floor at his girlfriend's house; that his boots left a print similar to those found at both scenes; that the *modus operandi* in both crimes was similar; that both firearms were recovered in the same location, thus indicating they were probably stolen by the same person; that Appellant fled from the police; that he provided no verification of his alibi; that the physical evidence actually contradicted his story; and that Appellant himself provided the motivation for these crimes, we conclude that the evidence was such that a reasonable jury might fairly conclude beyond a reasonable doubt, as it did here, that both of the burglaries were committed by the same individual and that Appellant was that person.

[¶ 18] Appellant also argues that he was deprived of a fair trial when the State failed to disclose evidence favorable to his defense, that being the existence and identity of Mr. Makinen.[1] The State does not here dispute the fact that it failed to provide the evidence at issue, albeit mistakenly. That is of no moment. "In *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Supreme Court set forth the basic principle that the prosecution violates due process by suppressing favorable evidence that is material either to the guilt or to the punishment of the accused, 'irrespective of the good faith or bad faith of the prosecution.' " *Davis v. State,* 2002 WY 88, ¶ 14, 47 P.3d 981 ¶ 14 (Wyo.2002).

 [¶ 19] The State argues, however, that there was no prejudice to Appellant because it promptly made Mr. Makinen available for interview, and Appellant called him to testify. The State points out as well that, while Appellant moved for a mistrial, he did not ask for additional time to investigate or to interview Makinen. As in *Davis:*

> We must determine, therefore, whether the government's failure to disclose evidence favorable to the defendant deprived the defendant of a fair trial under *Brady* by considering whether the "favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* at 290, 119 S.Ct. at 1952 (quoting *Kyles,* 514 U.S. at 435, 115 S.Ct. at 1566). In order to establish a *Brady* violation, a defendant must demonstrate that the prosecution suppressed evidence, the evidence was favorable to the defendant, and the evidence was material. *Helm v. State,* 1 P.3d 635, 639 (Wyo.2000).

*Davis* ¶ 16.

 [¶ 20] Evidence is "material" if:

"its suppression undermines confidence in the outcome of the trial." *Bagley,* 473 U.S. at 678, 105 S.Ct. at 3381. In *Kyles,* the Court further reviewed the meaning of materiality as it relates to the final result of the trial:

> *Bagley's* touchstone of materiality is a "reasonable probability" of a different result, and the adjective is important. The question is **not** whether the defendant would **more likely than not** have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A "reasonable probability" of a different result is accordingly shown when the government's evidentiary suppression "undermines confidence in the outcome of the trial."

*Davis* ¶ 19. (Emphasis in original.) (Citations omitted.)

[¶ 21] Defendant's theory at trial was to the effect that someone else committed the burglaries, and evidence that someone else had been passing $2 bills in Rawlins would initially appear to be at least of significant interest. However, this was one of those leads that, in the end, simply did not pan out. There is no doubt that the State had an obligation to produce the evidence as part of the court's discovery order, and it would certainly have been better if this had been done in a timely manner. However, the State promptly produced Mr. Makinen when his name came up at trial, and the defense had an opportunity to interview him at that time. Apparently, sufficient time was afforded the defense as no recess was requested. More importantly, Mr. Makinen testified at trial, and the jury had the opportunity to hear what he had to offer. His testimony indicated that the bills he purchased were new and sequentially numbered, unlike Ms. Lovato's bills, which were used and had been collected over a period of time. While he could not identify the railroader from whom he bought the bills, there is no indication in the record that Appellant requested additional time to attempt to locate this person or that any new evidence concerning his identity has been discovered even now. The jury had a full opportunity to hear Mr. Makinen's

---

1. We note that the evidence at issue was not completely suppressed, rather it was provided late. Nevertheless, we consider the matter at the outset as though the jury never heard Mr. Makinen's testimony.

testimony, to evaluate his credibility, and to weigh it against Appellant's argument that it was just as likely that the unknown railroader had committed the crimes as Appellant. They rejected this assertion.

[¶ 22] We conclude that Appellant was not denied a fair trial because material exculpatory evidence was withheld. Even had the evidence been entirely suppressed, we would be reluctant to conclude that it was material, as it did not call into question the physical evidence and uncontested facts upon which the jury clearly relied. *Hensley v. State*, 2002 WY 96, 48 P.3d 1099 (Wyo.2002). Here, the jury actually heard the evidence at issue, and they rejected it. Appellant speculates that there might have been other more persuasive evidence had the State revealed Makinen's evidence earlier, but there is nothing in the record to support such a conclusion, and Appellant made no request for additional time to investigate when he had the opportunity. We will not now join Appellant in this idle speculation.

[¶ 23] The judgment and sentence of the district court are affirmed in all respects.