William Ray HODGES, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 95–15.

Supreme Court of Wyoming.

Sept. 26, 1995.

MACY, Justice.

Appellant William Hodges appeals from his conviction for reckless endangering under WYO.STAT. § 6–2–504(a) (1983).

We affirm.

## ISSUES

Appellant presents four issues for our review:

I. Was there sufficient evidence to proceed beyond the State's case in chief, or to sustain the guilty verdict, where the State failed to produce any evidence that Appellant engaged in reckless conduct, and that the conduct complained of placed another in danger of death or serious bodily injury?

II. Did the Trial Court err in admitting testimony concerning the display of a rope by a third party subsequent to the events with which [A]ppellant was charged, and a 1980 incident in which the bicycle on which Wendell Brown was riding was roped by individuals other than the Appellant?

III. Did the Trial Court err in failing to give Appellant's requested jury instructions concerning W.S. 31–5–206 and W.S. 31–5–227 concerning passing on the right and driving on mountain highways?

IV. Did the Trial Court commit a series of errors, which standing alone may be considered harmless error, the cumulative effect of which results in such prejudice that it deprived the Appellant of a fair trial?

## FACTS

On September 5, 1993, Lawrence Wendell Brown, an avid bicyclist, was riding his bicycle over Teton Pass near the Wyoming–Idaho border. As Brown neared the crest of the pass, he heard a horn honk behind him. He moved to a parking area on the right side of the road, and a green pickup, which was traveling in the same direction as Brown was traveling, passed him. Appellant was driving the pickup, and a passenger was riding with him.

Brown continued to ride down the other side of Teton Pass. As he gained speed, Brown approached the green pickup which

Juline Christofferson and Richard Zucco, Jackson, for Appellant.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Theodore E. Lauer, Director of the Prosecution Assistance Program; and Cassandra Stump Ando, Student Intern for the Prosecution Assistance Program, for Appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

was traveling slower than the twenty miles per hour he was traveling on his bicycle. Brown proceeded to pass the pickup on the far right side of the road, riding between the white fog line and the edge of the pavement. As he neared the pickup, the pickup moved into the area between the fog line and the edge of the road, preventing Brown from passing it. Brown braked to avoid colliding with the pickup and resumed riding behind it.

Further down the road, Brown's speed increased to approximately forty to forty-five miles per hour, and he attempted to pass the pickup for a second time. Again, the pickup moved to the far right side of the road, prohibiting Brown from passing it. Brown braked and continued to ride behind the pickup. As he rode behind the pickup, Brown noticed that the passenger had a rope. Shortly thereafter, the pickup moved to the left side of its traffic lane, and the passenger waved from the window, signaling Brown to pass. Brown refused to pass the pickup because he saw that the passenger was hanging the rope, which had been shaped into a lariat loop, out the window. Brown was especially concerned about the situation because his bicycle had been roped in 1980, and he had been pulled behind a vehicle. Brown was able to avoid an accident in 1980 by employing his extensive cycling experience.

Brown continued to follow Appellant's pickup until they reached the bottom of the pass. When he got home, Brown telephoned the police and reported the incident, providing them with a partial description of the pickup's license plate number. The police identified Appellant as being the driver of the pickup, and, after they had interviewed him, they charged him with reckless endangering under § 6-2-504(a).

A jury trial was held on September 26 and 27, 1994. At the conclusion of the State's case-in-chief, Appellant moved for a judgment of acquittal. After the trial court denied his motion, Appellant presented his case to the jury. The jury returned a guilty verdict, and Appellant renewed his motion for a judgment of acquittal. The trial court denied Appellant's motion, entered a judg-ment on the verdict, and sentenced Appellant. Appellant appealed to this Court.

## DISCUSSION

### A. *Sufficiency of the Evidence*

Appellant contends that the trial court erred when it denied both of his motions for a judgment of acquittal.

W.R.Cr.P. 29 pertains to motions for a judgment of acquittal. That rule provides in pertinent part:

(a) *At close of evidence.*—Motions for directed verdict are abolished and motions for judgment of acquittal shall be used in their place. The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indict-ment, information or citation after the evi-dence on either side is closed if the evi-dence is insufficient to sustain a conviction of such offense or offenses. If a defen-dant's motion for judgment of acquittal at the close of the evidence offered by the state is not granted, the defendant may offer evidence without having reserved the right.

. . . .

(c) *After discharge of jury.*—If the jury returns a verdict of guilty or is discharged without having returned a verdict, a mo-tion for judgment of acquittal may be made or renewed within 10 days after the jury is discharged or within such further time as the court may fix during the 10–day period. If a verdict of guilty is re-turned, the court may on such motion set aside the verdict and enter judgment of acquittal within 10 days after such motion is filed, and if not so entered shall be deemed denied, unless within such 10 days the determination shall be continued by order of the court, but a continuance shall not extend the time to a day more than 30 days from the date the verdict is returned.

Both Appellant and the State argue that we must review the trial court's denial of the motion which Appellant presented at the end of the State's case by applying the plain error standard of review as was articulated in *Farbotnik v. State*, 850 P.2d 594 (Wyo.

1993). In that case, this Court held: "[F]ollowing the denial of a motion for acquittal, the introduction of evidence by a defendant[ ] results in a waiver of the motion, and an appellate court cannot review the sufficiency of the evidence except for plain error." 850 P.2d at 604. That case, however, involved a situation where the defendant had failed to renew his motion either at the close of all the evidence or after the verdict had been returned. 850 P.2d at 603–04.

■ In this case, by contrast, Appellant renewed his motion after the jury had returned its verdict. In order to recognize a defendant's efforts to renew his motion for a judgment of acquittal, while still giving effect to the waiver principle, the federal courts have fashioned a simple rule:

> [T]he introduction of evidence by defendant after his motion has been denied is a waiver of that motion. Accordingly even if the motion is renewed at the close of all the evidence, it is only the denial of the later motion that may be claimed as error. The conviction will be affirmed, even though the prosecution may have failed to make a prima facie case, if the evidence for the defense supplied the defect, and the whole record is sufficient to sustain a conviction.

2 CHARLES A. WRIGHT, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL § 463 at 644–45 (2d ed. 1982). Applying this rule to the case at bar, we conclude that Appellant waived the right to claim that the trial court erred by denying his first motion. We will, however, review the trial court's denial of the renewed motion which Appellant made after the jury had returned its verdict by applying our well established standard of review for sufficiency-of-the-evidence claims.

■ This Court assesses whether all the evidence which was presented is adequate enough to form the basis for a reasonable inference of guilt beyond a reasonable doubt to be drawn by a finder of fact when that evidence is viewed in the light most favorable to the State. *Baier v. State*, 891 P.2d 754, 761 (Wyo.1995). We will not substitute our judgment for that of the jury when we are applying this rule; our only duty is to determine whether a quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury actually did. *Id.*

Appellant was charged with reckless endangering under § 6–2–504(a), which provides: "A person is guilty of reckless endangering if he recklessly engages in conduct which places another person in danger of death or serious bodily injury." "Recklessly" is defined as being the following conduct:

> A person acts recklessly when he consciously disregards a substantial and unjustifiable risk that the harm he is accused of causing will occur, and the harm results. The risk shall be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation[.]

WYO.STAT. § 6–1–104(a)(ix) (1985).

We conclude that sufficient evidence supported Appellant's conviction. Each time Brown attempted to pass the pickup, Appellant maneuvered it so that Brown could not pass it. Brown testified that he had to brake to avoid colliding with the pickup when it moved to the front of him. Brown also testified that a variety of obstacles could be encountered on roadways and that Appellant's driving maneuvers made it difficult for him to see and, thereby, avoid such obstacles. The trial evidence established that a cyclist could incur many injuries as a result of a bicycle accident.

Appellant had driven over Teton Pass many times, and he conceded that he was usually wary when he encountered bicycles on the road. Appellant testified that he was aware that Brown was riding behind his pickup and that he knew Brown had attempted to pass the pickup. The passenger testified that Appellant was smiling when he prevented Brown from passing the pickup. The evidence presented at the trial also revealed that Appellant was at least aware of, if not an accomplice to, the passenger's decision to hang the rope out the window.

Elizabeth Hirschland, who was Appellant's acquaintance, testified at the trial that Appellant had bragged about not allowing Brown to pass the pickup. She also testified that

Appellant had told her that he directed the passenger to take the rope out and that Appellant knew that Brown was the bicyclist who was following his pickup on September 5, 1993. Appellant acknowledged that he was aware of the 1980 rope episode in which Brown had been involved.

■ Appellant argues that sufficient evidence was not presented at trial to prove that his actions actually placed Brown in danger. In *ALJ v. State*, 836 P.2d 307 (Wyo. 1992), this Court acknowledged that a defendant may be convicted of reckless endangering for creating a dangerous situation. 836 P.2d at 310. In that case, the defendant pointed an unloaded gun at the victim. 836 P.2d at 309–10. Brown was at no less of a risk here than the victim was in *ALJ*. Appellant's actions created a dangerous situation by causing Brown to have to brake in order to avoid colliding with the pickup and by obstructing Brown's view. The jury could have reasonably inferred that Brown was able to avoid having an accident only because he was an expert cyclist. Appellant cannot claim that he is innocent of the reckless endangering charge simply because his intended victim was sufficiently skillful so that he could avoid having an accident.

### B. *Rope Evidence*

■ Appellant contends that the trial court abused its discretion by admitting the testimony with regard to the 1993 and 1980 rope incidents.

A trial court's decision on the admissibility of evidence will be disturbed on appeal only for clear abuse of discretion, and it is incumbent upon an appellant to demonstrate such abuse. Exercise of discretion includes, *inter alia,* rulings with respect to the relevance ... of proffered evidence. *Guerra v. State,* 897 P.2d 447, 460 (Wyo.1995) (citation omitted).

Appellant contends that the evidence was not relevant under W.R.E. 401 and, therefore, inadmissible under W.R.E. 402 and that the evidence was not admissible pursuant to

W.R.E. 404(b).[1] Appellant also asserts that W.R.E. 403 prohibited the evidence from being admitted because the evidence was unfairly prejudicial, confusing, and misleading.

■ W.R.E. 401 defines relevant evidence as being "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." In criminal cases, evidence is relevant when it tends to prove or to disprove an element of the charged crime. *Geiger v. State,* 859 P.2d 665, 667 (Wyo.1993). Evidence which is relevant is admissible; evidence which is not relevant is not admissible. W.R.E. 402.

Under W.R.E. 403, relevant evidence may be excluded when it is unduly prejudicial to the defendant.

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

W.R.E. 403.

Both rope incidents involved evidence which was relevant in this case. The 1993 rope incident was an integral part of the story which described the series of events that surrounded the reckless endangering charge. That rope incident occurred shortly after Brown had made his second attempt to pass Appellant's pickup. The evidence was illuminating as to Appellant's state of mind and purpose when he prevented Brown from passing him. The 1993 rope incident suggested that it was likely that Appellant acted in conscious disregard of the danger when he moved to the front of Brown to prevent Brown from passing him. Appellant's knowledge of the 1980 rope incident was similarly probative of his state of mind. The evidence was also important in putting Brown's reluctance to pass after he saw the rope into perspective and in demonstrating that his

---

1. W.R.E. 404(b) cannot be used as the rationale for either admitting or excluding the evidence. W.R.E. 404(b) relates to a person's other bad acts. Since Appellant was not the primary actor in either of the rope incidents, those incidents cannot be characterized as being *his* other bad acts.

expertise in cycling may have accounted for his ability to avoid the obvious danger of the situation.

Appellant argues that the rope evidence should have been excluded under W.R.E. 403. He contends that the prosecutor sought to inflame and mislead the jury with the rope evidence by suggesting that Appellant may have been racially motivated to act as he did because Brown was an African–American man.

As we have already established, the rope evidence was probative as to Appellant's purpose and state of mind at the time when he prevented Brown from passing the pickup. Although the evidence was obviously prejudicial, it was not unduly inflammatory or misleading. The jury was fully aware that Appellant was not the primary actor in either rope incident and that the evidence was being offered to put Appellant's actions into perspective.

The trial court, therefore, did not abuse its discretion by admitting the evidence of the two rope incidents.

## C. *Jury Instructions*

 Appellant contends that the trial court erred by failing to give two jury instructions which he had requested.

At the jury instruction conference, Appellant requested that "the judge also instruct the jury relative to motor vehicle law, Wyoming Statute 31–5–206 and 31–5–227. And if the Court will not give those instructions we would ask that the Subsection [ (a) ] of Instruction 11 be stricken and not given." [2] Instruction No. 11, which quoted Wyo.Stat. §§ 31–5–702 and 31–5–704(a) (1984), stated:

> Pertinent portions of the Wyoming Statutes provide in part as follows:
>
> "Every person propelling a vehicle by human power or riding a bicycle has all of the rights and all of the duties applicable to the driver of any vehicle under this act, except as to special regulations in this act and except as to those provi-

sions which by their nature can have no application."

> "(a) Every person operating a bicycle upon a roadway shall ride as near to the right side of the roadway as practicable exercising due care when passing a standing vehicle or one proceeding in the same direction."

The trial court ruled that Wyo.Stat. §§ 31–5–206 and 31–5–227 (1984) were not applicable to the case and denied Appellant's request. The trial court also stated that Appellant had not presented a proposed instruction. Appellant did not object to the trial court's refusal to give his requested instructions.

 To preserve an issue with regard to a trial court's failure to give a requested jury instruction, a defendant "must object or have presented the proposed written instruction to the trial court with appropriate argument." *Sandy v. State*, 870 P.2d 352, 358 (Wyo.1994). Since Appellant did not present a written instruction to the trial court and did not object to the trial court's refusal to give his requested instructions, he failed to properly preserve his objections to the jury instructions. We, therefore, review the issue by applying a plain error analysis.

> Plain error exists when 1) the record is clear about the incident alleged as error; 2) there was a transgression of a clear and unequivocal rule of law; and 3) the party claiming the error was denied a substantial right which materially prejudiced him.

*Id.* (citing *Porth v. State*, 868 P.2d 236, 241 (Wyo.1994)).

The trial court did not commit plain error by refusing to give Appellant's requested instructions. Appellant concedes that Instruction No. 11 "properly instructed the jury that a bicyclist must comply with all duties applicable to the driver of any motor vehicle." He contends, however, that the instruction improperly implied that the law required Brown to pass the pickup on its right side. Appellant states that the trial court should have instructed the jury as to the requirements of §§ 31–5–206 and 31–5–

---

**2.** Appellant does not argue on appeal that the trial court erred by giving Instruction No. 11 to the jury.

227 in order to dispel that improper implication.

Section 31-5-206 specifies when the driver of a vehicle may pass another vehicle on its right side. Appellant contends that Brown was acting illegally when he attempted to pass the pickup on its right side and that the instructions needed to inform the jury of Brown's illegal action. Instruction No. 11 correctly quoted the relevant provisions of §§ 31-5-702 and 31-5-704(a). The instruction was pertinent to the recklessness element of the reckless endangering charge. Appellant suggests that he could have defended against the reckless endangering charge by showing that Brown was attempting to pass illegally. Appellant cannot justify his reckless conduct by arguing that Brown violated a traffic law. Appellant has not, therefore, shown that the trial court committed plain error by denying his request.

Section 31-5-227 describes the duties of drivers of motor vehicles which are traveling through defiles or canyons or on mountain highways. The trial court found that the statute did not apply to the Teton Pass road, and Appellant did not present any evidence or argument to support his contention that the statute did apply to the roadway. We cannot say that a clear and unequivocal rule of law was transgressed when the trial court denied Appellant's request.

### D. *Cumulative Error*

 Appellant contends that the trial court committed several errors which individually may have been harmless but amounted to cumulative error when they were considered together. We have frequently stated: "When no error has occurred, a claim of cumulative error cannot be recognized." *Vargas-Rocha v. State*, 891 P.2d 763, 771 (Wyo.1995) (citing *Springfield v. State*, 860 P.2d 435, 453 (Wyo.1993)). In this case, the trial court did not commit any underlying error which would support Appellant's cumulative error claim.

 Appellant contests several of the trial court's rulings with regard to the admissibility of testimony and evidence. We will not disturb a trial court's ruling on the admissibility of evidence unless the appellant demonstrates that the trial court abused its discretion. *See Candelaria v. State*, 895 P.2d 434, 436 (Wyo.1995).

 Appellant contends that the trial court erred by allowing Hirschland to testify at the trial about him bragging and admitting that he had directed the passenger to take the rope out because she was not timely listed as being a witness for the State and because her testimony was irrelevant to the case. We conclude that the trial court did not abuse its discretion by allowing her to testify. The trial court provided Appellant with an ample opportunity to interview Hirschland and to add additional witnesses to rebut her testimony. Hirschland's testimony with regard to Appellant's description of the incident was relevant in showing what Appellant's state of mind was at the time when he prevented Brown from passing his pickup. W.R.E. 401, 402.

 Appellant claims that the trial court erred by admitting a tape into evidence which contained a telephone conversation between Appellant and a police officer in which they were discussing the September 5, 1993, incident on Teton Pass. Appellant argues that the State did not present a sufficient foundation to justify the admission of the tape, that the taped information was irrelevant, and that the tape was admitted for an improper purpose.[3] We note that the tape has not been included in the record on appeal; however, a transcript of the conversation was included. After having reviewed the transcript, we conclude that the trial court did not abuse its discretion by admitting the taped information into evidence.

 A proper foundation must be established in order for evidence to be admitted. *See, e.g., Taul v. State*, 862 P.2d 649, 656-57 (Wyo.1993). In this case, the police officer was not available to testify because he had

---

**3.** Appellant does not offer any cogent argument or pertinent authority to support his contention that the evidence was offered for an improper purpose; accordingly, we refuse to consider that contention on appeal. *Makinen v. PM P.C.*, 893 P.2d 1149, 1155 n. 2 (Wyo.1995).

suffered a serious injury prior to the trial. Another officer appeared at the trial and established a sufficient foundation to support the admission of the tape. He testified that he was familiar with the voices of the police officer and Appellant and that he recognized their voices on the tape. He also attested that he had directed that the tape be copied and preserved as evidence, and he verified the chain of custody for the tape from the time when the tape was created until the date of the trial.

■ The information on the tape was relevant to the case. The conversation included an instance where Appellant referred to Brown by using a racial epithet. Appellant and the police officer also discussed the 1993 rope incident. Appellant initially denied that the rope incident had occurred, but later in the conversation he admitted that a rope had been involved. The taped evidence was probative as to Appellant's state of mind at the time when he prevented Brown from passing his vehicle.

■ Appellant also asserts that the trial court erred by failing to grant a mistrial when the State referred to the tape as being an "edited version" of the tape.

■ We review a trial court's decision to deny a motion for a mistrial by applying the abuse of discretion standard. *DeLeon v. State*, 894 P.2d 608, 612 (Wyo.1995); *see also Ramirez v. State*, 739 P.2d 1214, 1219–20 (Wyo.1987). The trial court directed the State and Appellant to edit the tape to remove inadmissible portions of the conversation. While he was attempting to lay the foundation for the admission of the tape, the prosecutor referred to the tape as being an "edited version." Appellant moved for a mistrial, arguing that the prosecutor's reference to the tape as being an edited version "compromised in the jury's mind the completeness of this tape." The trial court denied Appellant's motion but gave a cautionary instruction, directing the jury to disregard the prosecutor's remark that the tape had been edited.

Appellant does not specify how the prosecutor's comment prejudiced his case, and we conclude that, in the event any prejudice

resulted from the prosecutor's comment, the trial court's cautionary instruction remedied it. *DeSersa v. State*, 729 P.2d 662, 666 (Wyo. 1986). The trial court did not abuse its discretion by denying Appellant's motion for a mistrial.

■ Appellant insists that the trial court erred by allowing the testimony to be admitted about bicycle injuries which third parties had incurred and by allowing the passenger to testify as to whether he would feel comfortable jumping from a pickup which was traveling forty-five miles per hour. Appellant contends that this testimony was irrelevant. The testimony was relevant in proving that Appellant placed Brown in danger of death or serious bodily injury.

■ Appellant asserts that the trial court erred by allowing the State to cross-examine the officer about the laws applicable to bicyclists and about how bicycles should be operated because the State's questions were beyond the scope of the Appellant's examination of the officer.

Appellant called the officer as a witness in his case-in-chief. Appellant questioned him about the traffic and bicycle lanes on Teton Pass. The State simply expanded upon the theme of Appellant's inquiry. Since Appellant opened the door to the line of questioning about the proper operation of bicycles, he cannot complain that the State asked the officer similar questions. *See Vargas–Rocha*, 891 P.2d at 768.

■ Appellant challenges the State's closing argument by insisting that the prosecutor improperly injected his own beliefs as to the danger which was created by Appellant's actions and as to Appellant's guilty knowledge.

■ We would normally review Appellant's contention of error by applying the plain error standard because Appellant did not make an objection during the State's closing argument. *Baier*, 891 P.2d at 762. In this case, however, we cannot discern any error in the prosecutor's closing argument; consequently, we do not need to conduct a plain error analysis. *Vargas–Rocha*, 891 P.2d at 766. After having reviewed the

State's entire closing argument, we conclude that the prosecutor's comments were reasonable inferences on the evidence. 891 P.2d at 771.

Since the district court did not commit any error, harmless or otherwise, Appellant's claim of cumulative error cannot stand.

## CONCLUSION

In summary, we hold that sufficient evidence supported Appellant's conviction for reckless endangering and that the trial court did not commit any reversible error. Appellant's conviction is

Affirmed.