2008 WY 24

**James Michael EVENSON, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. S–07–0163.**

Supreme Court of Wyoming.

March 5, 2008.

---

Representing Appellant: Diane M. Lozano, State Public Defender; Tina N. Kerin, Appellate Counsel; Donna D. Domonkos, Senior Assistant Appellate Counsel; Kirk Allan Morgan, Assistant Appellate Counsel. Argument by Mr. Morgan.

Representing Appellee: Bruce A. Salzburg, Attorney General; Terry L. Armitage, Deputy Attorney General; Cathleen D. Parker, Senior Assistant Attorney General; D. Michael Pauling, Senior Assistant Attorney General. Argument by Ms. Parker.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

BURKE, Justice.

[¶1] A jury found James Michael Evenson guilty of aggravated assault in violation of Wyo. Stat. Ann. § 6-2-502(a)(ii) (LexisNexis 2007).[1] Due to prior felony convictions, he was sentenced under the habitual

---

1. Wyo. Stat. Ann. § 6-2-502 provides that: "(a) A person is guilty of aggravated assault and battery if he ... (ii) Attempts to cause, or intentionally or knowingly causes bodily injury to another with a deadly weapon; ... (b) Aggravated assault and battery is a felony punishable by imprisonment for not more than ten (10) years."

criminal statute, Wyo. Stat. Ann. § 6–10–201,[2] to life imprisonment. He appeals his conviction. We will affirm.

### ISSUES

[¶ 2]   Mr. Evenson states his two issues as follows:

1.  Whether the prosecutor committed prosecutorial misconduct when he elicited opinion testimony, argued facts not in evidence, misstated the law, and argued community protection.
2.  Whether the trial court abused its discretion in admitting Dr. Bruno's testimony as to the nature, extent, and cause of Mr. Montoya's injuries, as such testimony was not relevant under W.R.E. 401 and 402, and such testimony was unfairly prejudicial, confusing, and misleading to the jury under W.R.E. 403.

### FACTS

[¶ 3]   On the night of May 9, 2006, Jason Quinn, Michael Montoya, and two other members of the Wyoming Cavalry arena football team went to a bar in Casper, Wyoming. Shortly after they arrived, an altercation erupted between two other groups of men at the bar. The football players decided to leave. Leaving through the back door, Mr. Quinn bumped into another man, and they exchanged words. Outside, the situation became more heated, and the two began arguing and shoving. Others joined in, and the brawl escalated into what Mr. Quinn called "a riot of mayhem."

[¶ 4]   The man Mr. Quinn bumped into was an acquaintance of Mr. Evenson. Perhaps in an effort to protect his acquaintance, Mr. Evenson rushed at Mr. Quinn and slashed him with a boxcutter, leaving a severe cut across his chest. Mr. Quinn punched Mr. Evenson and knocked him to the ground. At this point, several people were running around, fighting, yelling, and

calling names. An unidentified person threw a beer bottle at Mr. Quinn, and someone else tried to cut him with a broken bottle. While Mr. Quinn was distracted, Mr. Evenson arose from where he had fallen, and attacked Mr. Quinn again, this time inflicting a severe cut on his side.

[¶ 5]   About a half block away, Mr. Quinn's teammate, Mr. Montoya, was separately involved in the melee. He suffered cuts to the back of his neck and on his wrist. Mr. Montoya's attacker was never identified, although Mr. Montoya confirmed that it was not Mr. Evenson. Eventually the fight broke up, and Mr. Quinn and Mr. Montoya went to the hospital, where both were treated in the emergency room. The emergency room physician described Mr. Quinn's injuries as deep, "slice type" wounds that, due to their location, were potentially life-threatening.

[¶ 6]   Mr. Evenson did not go to the hospital, although there is evidence that he suffered severe injuries to his mouth. He went instead with some friends to the home of an acquaintance. A few days later, after police started interviewing employees and patrons of the bar where the fight occurred, Mr. Evenson left for Texas. He was arrested in Texas and returned to Casper, where he faced two counts of aggravated assault. One count was dismissed by the prosecution, and Mr. Evenson was tried on the remaining count. At trial, Mr. Evenson did not deny that he had assaulted Mr. Quinn and cut his chest and side. Mr. Evenson asserted, however, that he had acted in self-defense. There was disputed evidence that Mr. Quinn had been holding a weapon, perhaps brass knuckles, when he hit Mr. Evenson. The record further indicates that Mr. Quinn was 6' 2" tall and weighed approximately 225 pounds, while Mr. Evenson was about 5' 8" tall and weighed around 160 pounds. The jury apparently rejected the claim of self-

---

**2.**  Wyo. Stat. Ann. § 6–10–201 provides that: "(a) A person is an habitual criminal if: (i) He is convicted of a violent felony; and (ii) He has been convicted of a felony on two (2) or more previous charges separately brought and tried which arose out of separate occurrences in this state or elsewhere. (b) An habitual criminal shall be punished by imprisonment for: (i) Not less than ten (10) years nor more than fifty (50) years, if he has two (2) previous convictions; (ii) Life, if he has three (3) or more previous convictions."

defense, and Mr. Evenson was convicted. He appeals.

## DISCUSSION

### Prosecutorial misconduct

[¶ 7] Mr. Evenson claims four instances of prosecutorial misconduct. He claims that the prosecutor elicited an improper opinion of guilt from a police officer, argued facts not in evidence, misstated the law of self-defense, and made improper community protection arguments. Because no objections were made to these incidents at trial, we review for plain error, requiring Mr. Evenson to demonstrate that: "1) the record is clear about the incident alleged as error; 2) there was a transgression of a clear and unequivocal rule of law; and 3) the party claiming the error was denied a substantial right which materially prejudiced him." *Talley v. State*, 2007 WY 37, ¶ 9, 153 P.3d 256, 260 (Wyo.2007). We will reverse if there is a reasonable probability that the verdict would have been more favorable to the appellant if the error had not occurred. *Id.* We review each instance separately, but recognize that allegations of prosecutorial misconduct are evaluated within the context of the entire record and the argument as a whole. *Sanderson v. State*, 2007 WY 127, ¶ 37, 165 P.3d 83, 93 (Wyo.2007).

### Opinion of guilt

[¶ 8] Mr. Evenson first cites the prosecution's direct examination of a police officer who had investigated the bar fight.

Q: After you spoke to Mr. Sage, what did you do?

A: Once we were able to determine exactly who the individual was that was responsible for the assault, we tried to locate that individual who would be Mr. Evenson, and we also at that point attempted to contact the players from the Cavalry and set up interviews with them.

Mr. Evenson claims that this amounted to an opinion that he was guilty. Opinions of guilt are improper, and inadmissible as evidence. *Stephens v. State*, 774 P.2d 60, 67 (Wyo.1989), *overruled on other grounds by Large v.* *State*, 2008 WY 22, ¶ 30, 177 P.3d 807, 816, 2008 WL 518061 (Wyo.2008).

[¶ 9] Mr. Evenson further asserts that the opinion of guilt was elicited by the prosecutor. Citing *McClelland v. State*, 2007 WY 57, ¶ 30, 155 P.3d 1013, 1023 (Wyo.2007), he argues that this was error per se, requiring a reversal of his conviction even without a showing of prejudice. However, if the prosecutor's question is read literally—"what did you do?"—it asked the witness what he did, not what his opinion was. We therefore disagree with Mr. Evenson that the prosecutor elicited opinion testimony. Further, we recently confirmed that an opinion of guilt, whether elicited by the prosecutor or not, must still be prejudicial before it justifies reversal. *Large*, 2008 WY 22, ¶ 30, 177 P.3d at 816.

[¶ 10] We also reject Mr. Evenson's claim that the testimony amounted to an opinion of guilt. Being "responsible for the assault" is not the equivalent of being "guilty of aggravated assault." The police officer's testimony described the course of his investigation and how he became aware of Mr. Evenson's involvement in the fight. It did not assert that the officer believed Mr. Evenson was guilty of the crime charged. The officer's testimony here was fundamentally different from testimony we have held to be improper in other cases. *Compare Whiteplume v. State*, 841 P.2d 1332, 1338 (Wyo.1992) (officer testified that he "listened to her story and made a determination that she had been raped"); *Stephens*, 774 P.2d at 62, 65–66 (three forensic experts testified that they thought the victim had been sexually abused, and two testified that they believed the defendant did it).

[¶ 11] Moreover, even if the testimony had been improperly admitted, it was not prejudicial when evaluated in the context of this case. Mr. Evenson never disputed that he had been involved in the fight, or that he was the person who attacked and cut Mr. Quinn. The officer's identification of Mr. Evenson was therefore harmless. Mr. Evenson asserted that he acted in self-defense, and as the State points out, "The obvious nature or quality of the plea of self-defense is that of justification or excuse for an other-

wise unlawful homicide or assault and battery." *Mewes v. State*, 517 P.2d 487, 488–89 (Wyo.1973). The basis of Mr. Evenson's self-defense argument was that his actions were justified or excused. The officer's testimony contained no opinion about whether Mr. Evenson acted in self-defense, or whether his actions were justified or excused on that basis. Mr. Evenson has not demonstrated that the testimony was admitted in transgression of a clear and unequivocal rule of law, or that it denied him a substantial right to his material prejudice. We find no plain error.

### Facts not in evidence

[¶ 12] Next, Mr. Evenson challenges a statement made by the prosecutor in his closing argument. Evidence at trial indicated that Mr. Evenson had been hit in the face by Mr. Quinn. Mr. Evenson was knocked to the ground, and his mouth was severely injured. Two witnesses testified that they had seen some metal object, perhaps brass knuckles, in Mr. Quinn's hand when he hit Mr. Evenson. Other witnesses, including Mr. Quinn, denied that he was carrying brass knuckles or any other metal object. Commenting on the conflicting evidence, the prosecutor said:

> I don't know how many of you ladies and gentlemen have ever had the opportunity to see or even hold a pair of brass knuckles, but for those of you who have or for those of you who haven't, I'm sure you can use your common sense and determine that if Jason Quinn had a pair of brass knuckles on his hands when he struck the defendant, Michael Evenson, there is no way that the defendant would have gotten back up that day. In fact, for those of you who are familiar with a pair of brass knuckles and are familiar with Jason Quinn who testified on the witness stand, if he hit the defendant so hard that it knocked him down wearing a pair of brass knuckles, the defendant would not have any front teeth.

Mr. Evenson asserts that there was no evidence about the effect of being hit by a person wearing brass knuckles, and in particular, no evidence that being hit by someone wearing brass knuckles would incapacitate the victim or knock out all of his front teeth. He relies on the "well-settled law that a prosecutor must restrict his argument to the evidence presented to the jury." *Talley*, ¶ 19, 153 P.3d at 262.

[¶ 13] The State focuses on the prosecutor's invitation to the jury to "use your common sense" to determine the likely effects of being hit by someone wearing brass knuckles. The prosecutor did not ask them to trust his knowledge, experience, or opinion about the effects of getting hit with brass knuckles, which would have been improper. *See, e. g., Talley*, ¶ 21, 153 P.3d at 263; *Browder v. State*, 639 P.2d 889, 893 (Wyo.1982). However, the jury knew that Mr. Quinn was an athlete and considerably larger than Mr. Evenson. The prosecutor asked them to consider, based on their own common sense, whether a blow from Mr. Quinn without brass knuckles could have knocked Mr. Evenson to the ground and injured his mouth, and whether a blow with brass knuckles might have caused more severe damage. Based on these considerations, the prosecutor asked the jury to infer that Mr. Quinn was not wearing brass knuckles. Prosecutors, like defense counsel, are allowed latitude during closing argument to assist the jury by suggesting reasonable inferences from the evidence introduced at trial. *Lafond v. State*, 2004 WY 51, ¶ 36, 89 P.3d 324, 336 (Wyo.2004); *Dysthe v. State*, 2003 WY 20, ¶ 24, 63 P.3d 875, 884 (Wyo. 2003). We find no error in the prosecutor's argument.

### Misstatement of the law of self-defense

[¶ 14] Following up on the previous comment about brass knuckles, the prosecution presented this statement in his closing argument:

> Now, the Defense is very desperately trying to put some kind of a weapon in Jason Quinn's hands. They know that if they cannot do that, then they cannot assert his right to self-defense, and therefore, he would not be justified in doing what they say he did.

Mr. Evenson insists that this is a misstatement of the law. A person claiming self-

defense, he contends, must prove only that he had a reasonable belief that he was in imminent danger of bodily harm, and that the force used in response was reasonable under the circumstances. He does not have to prove that the other person had a weapon. Mr. Evenson's contentions regarding self-defense are consistent with prior explanations from this Court:

> The right to defend oneself, and the amount and type of force used, is relative to what is reasonably necessary under the circumstances. It is for the jury to determine whether a defendant reasonably perceived a threat of immediate bodily injury under the circumstances and whether the defendant defended himself in a reasonable manner. Thus, the jury must evaluate the totality of the circumstances and evaluate all of the defendant's options in protecting himself from such a perceived threat of harm.

*Baier v. State*, 891 P.2d 754, 758 (Wyo.1995). Under this formulation, the presence or absence of a weapon is relevant as part of the totality of the circumstances, but it is not determinative. We therefore agree with Mr. Evenson that the prosecutor misstated the law when he said that Mr. Evenson could not assert self-defense if he could not prove that Mr. Quinn had a weapon.

[¶ 15] The State refers us to cases from other jurisdictions to propose that, with respect to a claim of self-defense, it is not reasonable to use a knife in a fist fight. Cases such as *In re Q.M.L.*, 257 Ga.App. 22, 570 S.E.2d 92, 94 (2002), indicate that a fact finder is "authorized to find that being struck by another's fists does not justify using a knife to stab that person." But being authorized to find that is not the same as being required by law to find that. The State has not supported its position that, as a rule of law, it is never justified to use a knife in a fist fight. Particularly given the difference in physical characteristics between Mr. Evenson and Mr. Quinn, the jury would have been "authorized" to find that Mr. Evenson was justified in using a boxcutter to defend himself from Mr. Quinn's fists, whether or not Mr. Quinn had a weapon.

[¶ 16] While Mr. Evenson has shown error, he has not demonstrated prejudice. Correct statements of the law of self-defense were emphasized in subsequent arguments by the prosecution, the closing argument by the defense counsel, and the jury instructions given by the trial court. The effect of the prosecutor's single misstatement was so thoroughly diluted that the error can only be interpreted as harmless.

[¶ 17] The prosecutor never again suggested that Mr. Evenson was required to prove that Mr. Quinn had a weapon in order to rely on self-defense. Instead, after discussing the testimony from various witnesses, the prosecutor began reviewing the instructions on self-defense that the trial court had already provided to the jury. He paraphrased or quoted from three of the instructions, and in reciting these correct statements of the law, dulled any impact of his earlier misstatement.

[¶ 18] When reviewing allegations of prosecutorial misconduct, we evaluate the prosecutor's actions in the context of the entire record. *Sanderson*, ¶ 37, 165 P.3d at 93; *Talley*, ¶ 9, 153 P.3d at 260. It is appropriate, then, to consider the prosecutor's misstatement of the law of self-defense in light of the contrary arguments made by defense counsel. In his closing argument, defense counsel took the opportunity to explain why Mr. Evenson could, indeed, claim self-defense whether or not Mr. Quinn had a weapon.

> Jason Quinn had some type of weapon in his hand. And the thing about it is it really doesn't even matter if Jason Quinn had brass knuckles in his hand. You saw Jason Quinn was six-two, 227 pounds. Mike Evenson has been described as I think five-eight, 160, somewhere in there. Jason Quinn by himself without any weapons could kill somebody by beating them. He himself is a dangerous weapon.

In this and similar arguments, defense counsel further diminished any remaining effect of the prosecution's misstatement. By arguing that Mr. Evenson could claim self-defense, "brass knuckles or no brass knuckles," defense counsel helped to ensure that the

prosecutor's misstatement was rendered harmless.

[¶ 19] The trial court further diminished any potential prejudice by offering the jury several instructions that, read together, provided a thorough and accurate explanation of self-defense. Instruction 12, for example, was particularly helpful in correcting the prosecutor's misstatement of the law.

> It is lawful for a person who is being assaulted to defend himself from attack if he has reasonable grounds for believing and does believe that bodily injury is about to be inflicted upon him. In doing so he may use all force which would appear to a reasonable person, in the same or similar circumstances, to be necessary to prevent the injury which appears to be imminent.

[¶ 20] We have often stated that prosecutorial misconduct justifies a mistrial only if it worked material prejudice against the defendant by creating a substantial risk that justice was miscarried. *See, e.g., Farmer v. State*, 2005 WY 162, ¶ 26, 124 P.3d 699, 709 (Wyo.2005). In Mr. Evenson's trial, the prosecutor did make a misstatement of the law. He followed that, however, with several correct recitations of the law. His misstatement was directly contradicted in the closing argument for the defense, and was further countered by the trial court's jury instructions. Under these circumstances, we find no reasonable possibility that the jury might have reached a different verdict if the prosecution had not made this misstatement. Finding no prejudice, we conclude there was no plain error.

### Community protection argument

[¶ 21] In his final claim of prosecutorial misconduct, Mr. Evenson points to an argument that, he asserts, was "a kind of community outrage argument" asking the jury "to convict for reasons other than the evidence in order to protect the community." The argument at issue was this:

> If Jason Quinn would have hit him with a pair of brass knuckles ... that all of a sudden justifies you being able to pull out a knife and hack and whack at that individual? We would have a lot of people killed, injured seriously in the community and a lot of others if that was the case, wouldn't we, ladies and gentlemen?

Mr. Evenson is correct that a claim of self-defense must be decided on the facts of each individual case, and prosecutors "should refrain from argument which would divert the jury from its duty to decide the case on the evidence." ABA Standards for Criminal Justice, *The Prosecution Function*, Standard 3–5.8(d) (1980). Wyoming precedent is to that same effect:

> Arguments which are calculated to appeal to the jury's prejudice or passion are improper because they pose a risk that the accused may be convicted for reasons wholly irrelevant to his guilt or innocence. Accordingly, it is improper for a prosecutor to encourage the jury to convict a defendant in order to protect the community rather than upon the evidence presented at trial.

*Burton v. State*, 2002 WY 71, ¶ 15, 46 P.3d 309, 314 (Wyo.2002) (internal citations omitted).

[¶ 22] To determine whether the prosecutor's arguments in Mr. Evenson's case were improper, it is useful to compare them to arguments previously reviewed by this Court. In *Gayler v. State*, 957 P.2d 855, 860–61 (Wyo.1998), we found improper the prosecution's invitation to the jury to join in a war against drugs:

> Drugs, Ladies and Gentleman, is there a more insidious or terrible disease that affects our society today? It tears families apart; steals away our youth. It's ripping the seams of our nation. Costs the taxpayers millions of dollars....

> Ladies and Gentleman, Lincoln County Law Enforcement is taking the war on drugs dead serious. They are not going to tolerate the delivery of methamphetamine or any drugs in this county. It doesn't matter if it's a small amount, like what we had here, or a large amount. We are not going to tolerate it. Absolutely not....

> This is your opportunity, as a jury, to take a stand with Lincoln County Law Enforcement and say that we will not tolerate drug dealers in our county. We will not tolerate it.

Not surprisingly, we found this argument "improper because it appealed to the jury's passion and prejudice against drug-related crimes." *Id.* at 861. In contrast, we found in Burton that the following argument did not justify reversal:

> You heard a lot of testimony about these young kids and the behavior that they were involved with. But ask yourself, ladies and gentlemen, would they ever get the opportunity to be doing these kinds of things if not for the likes of the [drug pushers] of the world? . . .
>
> You ladies and gentlemen have the opportunity, the power to say that we are going to protect kids like [the victim] in our community.

*Burton,* ¶¶ 14, 19, 46 P.3d at 314, 315. While we did not approve of this comment, we concluded that the prosecutor had not improperly urged the jury to convict on a basis other than the evidence. We observed that it is not improper for the prosecutor to "remark that conviction of the accused will have the incidental effect of protecting the community if he does not urge the jury to convict on a basis other than the evidence against the accused." *Id.,* ¶ 20, 46 P.3d at 315.

[¶ 23] On the whole, we find the arguments in Mr. Evenson's case more like the arguments in Burton than those in *Gayler.* The comment about having "a lot of people killed, injured seriously in the community" treads close to the line. However, unlike the improper argument in *Gayler,* the prosecutor here did not exhort the jury to take a stand or send a message. The prosecutor asked the jury if it was reasonable to use a knife in a fist fight, and that was the precise question raised by Mr. Evenson's self-defense claim. In the context of Mr. Evenson's trial, the prosecutor's argument did not improperly distract or mislead the jury into finding guilt for reasons beyond the evidence. There was no transgression of a clear and unequivocal rule of law, and accordingly, no plain error.

### Evidence about Mr. Montoya's injuries

[¶ 24] One of the prosecution's witnesses was Dr. Bruno, the physician who treated Mr. Quinn and Mr. Montoya at the hospital after the fight. Dr. Bruno provided details about the nature and extent of Mr. Quinn's injuries, and related how he had treated them. He was then asked about treating Mr. Montoya, and about the nature, extent, and possible cause of his injuries. Defense counsel objected that this testimony was not relevant, but the trial court overruled the objection and allowed the evidence. On appeal, Mr. Evenson continues to object that this testimony was not relevant and should not have been admitted into evidence.

[¶ 25] We review the trial court's ruling on the admissibility of evidence for abuse of discretion.

> A trial court's decision on the admissibility of evidence is entitled to considerable deference, and will not be reversed on appeal unless the appellant demonstrates a clear abuse of discretion. "[A]s long as there exists a legitimate basis for the trial court's ruling, that ruling will not be disturbed on appeal." *Sanchez v. State,* 2006 WY 116, ¶ 20, 142 P.3d 1134, 1140 (Wyo.2006).

*Leyva v. State,* 2007 WY 136, ¶ 17, 165 P.3d 446, 452 (Wyo.2007).

> Even if the district court admitted evidence in error, we must consider whether the error was prejudicial or harmless. *Solis v. State,* 981 P.2d 34, 36 (Wyo.1999). Error is prejudicial if there is a reasonable possibility that the verdict might have been more favorable to the defendant if the error had not been made. *Id.* Prejudicial error requires reversal, while harmless error does not. W.R.A.P. 9.04.

*Reay v. State,* 2008 WY 13, ¶ 8, 176 P.3d 647, 650 (Wyo.2008).

[¶ 26] W.R.E. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evidence that is not relevant is not admissible. W.R.E. 402. As we have previously observed, "In criminal cases, evidence is relevant when it tends to prove or to disprove an element of the charged crime," *Hodges v. State,* 904 P.2d 334, 340 (Wyo.1995), or more broadly, when it "tends to make the question

of guilt more or less probable." *Engberg v. Meyer*, 820 P.2d 70, 153 (Wyo.1991).

[¶ 27] In this case, Mr. Evenson was tried for one count of aggravated assault for his attack on Mr. Quinn. He was not charged with assaulting Mr. Montoya. Indeed, Mr. Montoya testified unequivocally that someone other than Mr. Evenson had attacked him. Thus, testimony about Mr. Montoya's injuries had no tendency to prove any element of the crime charged, or to make Mr. Evenson's claim of self-defense any more or less probable. Dr. Bruno's testimony about Mr. Montoya's injuries was not relevant evidence.

[¶ 28] The State asserted at trial, as it does now, that Dr. Bruno's testimony was necessary to bolster Mr. Montoya's credibility. Defense counsel attacked Mr. Montoya's credibility, and in particular, asserted that he lied to hospital personnel about the presence of the police at the scene of the fight, and to a newspaper reporter about the cause of his injuries. The State maintains that a "corollary to the rule allowing a party to attack the credibility of a witness is to permit the opposing party to bolster that credibility." *Barnes v. State*, 858 P.2d 522, 534 (Wyo.1993). Thus, the State posits, the defense's attack on Mr. Montoya's credibility entitled the prosecution to elicit evidence corroborating his testimony.

[¶ 29] The weakness in the State's position is that there was no dispute about the nature and extent of Mr. Montoya's injuries. Mr. Montoya was impeached concerning statements to hospital personnel and to a newspaper reporter. His credibility on those two challenged statements was not restored by evidence corroborating unchallenged statements by Mr. Montoya about his injuries. While we have found no Wyoming cases directly addressing this point, we are persuaded by these comments from a noted authority on the law of evidence:

> [R]ehabilitating facts must meet the impeachment with relative directness. The wall, attacked at one point, may not be fortified at another, distinct point. Credibility is a side issue, and the circle of

relevancy in this context should be drawn narrowly. When we reach the stage of rehabilitation after impeachment, we are rather far afield from the historical merits of the case; and the courts justifiably insist on a stronger showing of relevance to minimize the risk that the jury will lose sight of the merits.

1 Kenneth S. Broun, *McCormick on Evidence* § 47, 221–22 (6th ed.2006) (footnote omitted). Efforts to rehabilitate Mr. Montoya's credibility by corroborating unchallenged statements about injuries that were not relevant to the charges against Mr. Evenson went too far afield. Dr. Bruno's testimony on this topic should not have been admitted into evidence.

[¶ 30] The fact that Dr. Bruno's testimony concerned an undisputed and irrelevant topic is, however, also part of the reason it was harmless error to admit such testimony. Mr. Montoya made it clear that Mr. Evenson did not attack him or cause his injuries. Testimony about the extent of his injuries could not, therefore, reflect badly on Mr. Evenson or unfairly turn the jury against him. Moreover, the record shows that Dr. Bruno's testimony was straightforward, professional, and unemotional. There was nothing gruesome or sensational that might have upset or inflamed the jury. In all, the challenged testimony took only a few minutes in the course of a three-day trial. There is no reasonable possibility that the jury's verdict might have been different if Dr. Bruno's testimony had been excluded. Because admission of the challenged testimony was harmless error, we find no reversible error.

[¶ 31] In all respects, Mr. Evenson either failed to demonstrate error or, where error was shown, failed to demonstrate prejudice. We affirm his conviction.